NOTICE

Decision filed 03/20/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250366-U

NO. 5-25-0366

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Franklin County. |
| | ) | |
| v. | ) | No. 85-CF-60 |
| | ) | |
| RODNEY D. BARNHILL, | ) | Honorable |
| | ) | Ronald J. Giacone II, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HACKETT delivered the judgment of the court.
Justices Barberis and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the defendant failed to make a *prima facie* showing of cause, the circuit court did not err in denying his motion for leave to file a successive postconviction petition. Because no argument to the contrary would have arguable merit, the defendant's appellate counsel is granted leave to withdraw, and the circuit court's judgment is affirmed.

¶ 2    In 1986, the defendant, Rodney D. Barnhill, pleaded guilty but mentally ill to murder, and the circuit court subsequently sentenced him to imprisonment for a term of natural life. In 2025, the defendant filed his fourth motion for leave to file a successive postconviction petition. He sought to raise a claim that his natural-life sentence was cruel and unusual because, at the time of his offense, he was mentally ill. The circuit court denied him leave to file a successive petition. The defendant now appeals. His appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and on that basis, has filed a motion

1

for leave to withdraw as counsel (see *Pennsylvania v. Finley*, 481 U.S. 551 (1987)), along with a supporting memorandum of law. OSAD served the defendant with notice. This court gave him ample opportunity to file a written response to OSAD's motion, but the defendant has not filed a response. This court has examined OSAD's *Finley* motion and memorandum of law, the record on appeal, and prior decisions in appeals stemming from the defendant's criminal case. This court concludes that this appeal does indeed lack merit. Accordingly, this court grants OSAD leave to withdraw as counsel and affirms the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4                          A. The Charge and Fitness to Stand Trial

¶ 5     On July 4, 1985, the defendant, age 24, strangled Ruth Ann Boner, age 14, with a coat hanger, killing her. The defendant was charged with murder. See Ill. Rev. Stat. 1985, ch. 38, ¶ 9-1(a)(2) (now 720 ILCS 5/9-1(a)(2) (West 2024)). The circuit court appointed defense counsel for him.

¶ 6     On motion of defense counsel, the circuit court appointed a psychiatrist to examine the defendant for fitness to stand trial. Three months later, defense counsel presented the court with a report prepared by psychiatrist Thomas T. Flynn, M.D. In his report, Dr. Flynn opined that the defendant understood the charge against him and could cooperate in his own defense. The court found that nothing in Dr. Flynn's report provided reason to find the defendant unfit for trial.

¶ 7                          B. Plea of Guilty but Mentally Ill

¶ 8     On January 6, 1986, the parties appeared before the circuit court. After the court confirmed with the defendant that a plea agreement had been reached, the prosecutor and defense counsel stated that the plea was an open plea of guilty but mentally ill. See *id.* ¶ 115-2 (now 725 ILCS 5/115-2 (West 2024)). The court fully admonished the defendant as to the nature of the charge of

murder; the possible penalties, including the penalty of life imprisonment if the court found that the murder was accompanied by exceptional brutality or heinous behavior indicative of wanton cruelty; and the ramifications of a plea of guilty but mentally ill. The defendant indicated his understanding of all those matters. The court questioned the defendant about his physical health, his medications, his schooling, and his living situation. As to medications, the defendant reported that he "[took] an injection every two weeks from Mental Health," along with a pill to address the side effects of the injection. The court explained the defendant's right to a trial, his rights at trial, and the consequences of a plea of guilty, and the defendant indicated his understanding. The defendant also indicated that his plea was voluntary and that no one had forced him or compelled him, in any way, to plead guilty. To the charge of murder, the defendant pleaded guilty but mentally ill.

¶ 9       In order to establish a factual basis for the defendant's plea, the State called John Moore, an investigator with the Franklin County Sheriff's Department, to testify. According to Moore, on July 5, 1985, he and other police officers found the cold, dead body of Ruth Ann Boner in a house in Benton, Illinois. Moore further testified that on July 6, 1985, and again on September 10, 1985, he interviewed the defendant. The defendant told him that on July 4, 1985, he wanted to have sex with Ruth Ann Boner, and therefore he lured her to an abandoned house in Benton with the promise of a bicycle. The defendant stated that he removed her clothing, but she resisted, leading him to choke her with a wire hanger, thus killing her. At the conclusion of Moore's testimony, the court asked the defendant whether the testimony was substantially true, and the defendant answered in the affirmative. In response to the court's query, the defendant indicated that he was pleading guilty because he did, in fact, murder Ruth Ann Boner.

3

¶ 10    The court found that the defendant's plea was knowing and voluntary. However, the court did not yet accept the plea. Defense counsel recommended a clinical psychologist to evaluate the defendant, and the court appointed one to perform the evaluation. The State informed the court that it planned to have a psychiatrist also examine the defendant.

¶ 11           C. Psychological or Psychiatric Examination of the Defendant

¶ 12    Both clinical psychologist Frederic Golden, Ph. D., and psychiatrist Joseph S. Shuman, M.D., examined the defendant. They prepared reports on his mental health and intellectual abilities.

¶ 13    Dr. Golden, in his report, stated that formal testing of the defendant showed "severe, pervasive chronic psychopathology" that was "multidimensional in nature and interfere[d] with all aspects of [the defendant's] adjustment." Dr. Golden diagnosed the defendant with schizophrenia, undifferentiated type, as well as mild mental retardation. The defendant experienced auditory hallucinations, including command hallucinations that have "serious potential" for leading to violent acts against himself or others. The defendant had "an extremely poor self-image," "persecutory delusions," and an "intense underlying anger (especially toward women)," as well as "intellectual deficits." He was "prone to self-destructive behaviors," was "unable to effectively control his emotional impulses," and was at "high risk for sexual and other forms of acting out." Golden opined that the defendant was in need of long-term psychiatric care.

¶ 14    Dr. Shuman, in his own report, described his talks with the defendant and the psychological tests that he performed on him. Dr. Shuman stated that the defendant could "probably be diagnosed as suffering from a schizophrenic disorder although it is difficult to categorize him. He probably fits best into the 'residual type.' This is super-imposed on a paranoid personality." However, according to Dr. Shuman, "[t]he signs of any serious mental illness are now very meager." For

4

example, the defendant claimed to hear voices, but these voices "occur rarely and certainly not often enough for a diagnosis of Schizophrenia." Dr. Shuman opined that the defendant "did know and could appreciate the nature, quality and wrongfulness of his alleged conduct and that he was capable of conforming his conduct to the requirements of law." Dr. Shuman administered a "simple IQ examination" that showed the defendant had an IQ of 77, which was "in the borderline range." A learning disability, Dr. Shuman stated, had had "a strong effect upon his personality," with the defendant describing many years of ridicule by schoolmates. According to Dr. Shuman, the defendant's behavior would require "much control and supervision" because "[t]he prognosis is quite poor."

¶ 15    D. Court's Finding of a Factual Basis that the Defendant was Mentally Ill,

Acceptance of Defendant's Plea

¶ 16    On July 9, 1986, the parties appeared before the circuit court. They stipulated to the reports prepared by Dr. Golden and Dr. Shuman. They also stipulated that the court could consider the fitness report previously prepared by Dr. Flynn. The court examined the three reports. Based on those reports, the court found that there was a factual basis that the defendant was mentally ill at the time of his offense. The court accepted the defendant's plea of guilty but mentally ill, and it entered judgment on the plea.

¶ 17                              E. Sentencing

¶ 18    In July 1986 the circuit court conducted a sentencing hearing. At the time of the offense, the standard sentencing range for murder was between 20 and 40 years in prison. Ill. Rev. Stat. 1985, ch. 38, ¶ 1005-8-1(a)(1)(a) (now, as amended, 730 ILCS 5/5-4.5-20(a) (West 2024)). However, the court had discretion to sentence a murder defendant to natural life imprisonment if it found that "the murder was accompanied by exceptionally brutal or heinous behavior indicative

5

of wanton cruelty." *Id.* ¶ 1005-8-1(a)(1)(b) (now 730 ILCS 5/5-8-1(a)(1)(b) (West 2024)). At the end of the sentencing hearing in this case, the court found that the murder was exceptionally brutal or heinous, and on that basis, the court chose to impose a sentence of natural life imprisonment.

¶ 19                    F. Motion to Withdraw the Plea of Guilty but Mentally Ill

¶ 20    One week after the sentencing, the defendant *pro se* filed a motion to withdraw guilty plea. He claimed, *inter alia*, that he pleaded guilty based on "the understanding and promise that a more lenient sentence would be imposed, and that defendant would not be incarcerated in a penitentiary, but would be placed in a mental health facility." The court held a hearing on the motion to withdraw guilty plea, at which the defendant was represented by newly appointed counsel. The defendant, who was the sole witness at the hearing, testified that both his plea counsel and a police captain promised him that he would not go to prison and that he needed the help that a mental institution could provide. The court recalled how thoroughly it had admonished the defendant at the time of the guilty plea, and how well the defendant seemed to understand the proceedings. On that basis, the court denied the motion to withdraw the plea.

¶ 21                                G. Direct Appeal

¶ 22    On direct appeal, the defendant argued, *inter alia*, that his plea was induced by a false promise that if he pleaded guilty, he would be sentenced to a mental hospital; and that his sentence of natural life imprisonment was excessive in light of the defendant's age, mental illness, etc. This court rejected his arguments and affirmed the judgment of conviction. *People v. Barnhill*, 188 Ill. App. 3d 299 (1989).

¶ 23      H. Defendant's "Motion for Retrial and to Vacate Sentence,"
Treated as an Initial Postconviction Petition

¶ 24     In 2000, the defendant filed a "motion for retrial and to vacate sentence." He claimed that the circuit court, although it had allowed a psychiatrist to interview the defendant, had failed to conduct an evidentiary hearing to determine the issue of the defendant's fitness. Because the defendant was on a psychotropic medication, Prolixin, the court was required to hold such a hearing, and its failure to do so deprived him of due process.

¶ 25     In ruling on the defendant's "motion for retrial and to vacate sentence," the circuit court treated the motion as a petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 1998)). The court stated that "[t]he defendant has made no substantial showing that his constitutional rights were violated," and that "[t]his defendant is also time barred to raise this issue under the limitation imposed by ILCS 725 5/122-1(b) (*sic*)." Because the record did not raise any *bona fide* doubt of the defendant's fitness, the court stated, there was no requirement for a fitness hearing. The circuit court denied the motion. The defendant appealed. The circuit court appointed OSAD to represent him on appeal.

¶ 26     On appeal, the defendant argued, *inter alia*, that his sentence of natural-life imprisonment needed to be vacated, and he needed to be resentenced, because the natural-life sentence was imposed pursuant to an unconstitutional statute per *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (the United States Constitution requires that any fact, except recidivism, that increased the prescribed range of penalties must be pled in the charging instrument and submitted to a jury and proved beyond a reasonable doubt). This court found that there was no *Apprendi* violation where the defendant pleaded guilty after being fully admonished as to the possible sentence, including the sentence of natural life. This court affirmed the judgment of the circuit court. *People v. Barnhill*, No. 5-00-0448 (2001) (unpublished order under Illinois Supreme Court Rule 23).

¶ 27    I. Defendant's Subsequent Collateral Attacks on the Judgment of Conviction

¶ 28    In August 2004 the defendant *pro se* filed a petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2002)). It was another collateral attack on the defendant's sentence. The State moved to dismiss. In October 2004 in a docket-entry order, the circuit court dismissed the section 2-1401 petition. The defendant appealed. On appeal, the defendant argued, *inter alia*, that he was sentenced to natural-life imprisonment under a statute that ran afoul of *Apprendi*. This court affirmed the circuit court's judgment. *People v. Barnhill*, No. 5-04-0753 (2006) (unpublished order under Illinois Supreme Court Rule 23).

¶ 29    In March 2009 the defendant *pro se* filed his first-ever motion for leave to file a successive postconviction petition (motion for leave). He sought to claim, *inter alia*, that his decision to plead guilty but mentally ill was due to trial counsel's creating the false impression that if he pleaded guilty, "the implied promise of the government's investigator (being treatment in a mental hospital) would manifest itself." In April 2009 the circuit court entered a written order that denied the defendant's motion for leave. The court stated that the motion was "merely a rehash of claims [the defendant] has many times made before this court and the appellate court unsuccessfully." The defendant did not appeal from the denial order.

¶ 30    In May 2009 the defendant *pro se* filed a petition for *habeas corpus* relief. See 735 ILCS 5/10-101 *et seq.* (West 2008). He contended that he was entitled to immediate release from custody because the circuit court violated his right to due process by (1) accepting his plea, which was induced by false promises and (2) imposing an excessive sentence. The circuit court dismissed the petition with prejudice. The defendant appealed.

¶ 31    In April 2011 this court decided that the defendant's *habeas corpus* petition failed to state a cause of action and was barred by *res judicata*. This court affirmed the dismissal of the petition.

8

*Barnhill v. Rednour*, No. 5-09-0441 (2011) (unpublished order under Illinois Supreme Court Rule 23).

¶ 32 In March 2012 the defendant *pro se* filed his second motion for leave to file a successive postconviction petition. The motion for leave was accompanied by the proposed successive petition. The defendant sought to raise claims that included, *inter alia*, a claim that his plea was involuntary due to mental illness and to his being administered a psychotropic drug, Prolixin, at the county jail at the time of his plea. The cause for not raising the various postconviction claims earlier was that the claims were "newly discovered and additional to the original petition." Prejudice resulted because the defendant was unfit to stand trial due to his being administered a psychotropic drug. The circuit court denied the defendant's second motion for leave. "There are no new matters not previously asserted in the record," the court stated, "and the claims do not meet the cause and prejudice test as required by statute." An appeal followed. This court affirmed the circuit court's judgment. This court stated, *inter alia*, that the defendant's claim that his plea was involuntary "has been rejected on numerous occasions by the circuit court as well as this court." *People v. Barnhill*, 2015 IL App (5th) 120181-U, ¶ 19.

¶ 33 In September 2024 the defendant *pro se* filed his third motion for leave to file a successive postconviction petition. The defendant sought to raise claims that included, *inter alia*, a claim that he had been "misinformed" that if he were to plead guilty, he would be placed in a state mental hospital. As cause for not bringing his claims earlier, the defendant stated: "Not being able to read or write, not having the proper representation. Being incarcerated has stopped me from being able to properly gather facts." As prejudice, he stated: "Having a false testimony from a witness which put the natural life clause in effect during my sentencing. Deliberately misleading me to take a plea and giving me false information about being sentence[d] to a state hospital." Attached to the

9

motion were various exhibits, ranging from the defendant's special-education records from the 1970s to documents relating to his criminal case. Many of the exhibits were psychological reports on the defendant.

¶ 34 In October 2024 the court entered a written order denying the defendant leave to file a successive postconviction petition. "There is nothing new here," stated the court, "and these claims do not satisfy the cause and prejudice test." The defendant did not appeal from the order denying his third motion for leave.

¶ 35         J. Defendant's Fourth Motion for Leave: The Subject of the Instant Appeal

¶ 36 On January 7, 2025, the defendant filed *pro se* the motion that is the subject of this appeal— the defendant's fourth motion for leave to file a successive postconviction petition. The defendant sought to raise a claim that his natural-life sentence was cruel and unusual, in violation of the eighth amendment to the United States Constitution (U.S. Const., amend. VIII), because at the time he committed his crime, he was mentally ill, and therefore far less culpable than a typical adult and less likely to be irretrievably depraved. Sentencing a person who is "disabled with mental health" to life imprisonment is akin to sentencing a juvenile offender to life without parole, the defendant asserted. According to the defendant, cause for his failure to bring his claim earlier was due to the United States Supreme Court's not yet deciding *Miller v. Alabama*, 567 U.S. 460 (2012) "and other rulings relating to mental health defendants." Prejudice resulting from the defendant's failure to bring the claim earlier was in the form of the conviction or sentence violating due process and the constitutional prohibition on cruel and unusual punishment. Various documents, including pages from the record, were attached to the motion for leave.

¶ 37 On March 13, 2025, the circuit court entered a written order denying the defendant's fourth motion for leave. The court found that the proposed postconviction claim was *res judicata* because

10

the court already had considered the defendant's mental health at the time of sentencing. "Essentially, the [c]ourt already did what [d]efendant now argues is a requirement under a new line of cases."

¶ 38    The defendant filed a motion to reconsider. Attached to the motion was an article reporting on recent advances in neuroscience and psychology concerning "late adolescents," *i.e.*, people aged 18-21 years, as well as the legal and public-policy implications of those advances. The defendant did not explain how the article related to him, given that he was 24 years old at the time of his offense. The circuit court denied the motion to reconsider.

¶ 39    The defendant perfected an appeal from the denial order. The circuit court appointed OSAD as his appellate counsel.

¶ 40                                   II. ANALYSIS

¶ 41    The defendant appeals from the circuit court's denial of his fourth motion for leave to file a successive postconviction petition. OSAD, in the legal memorandum accompanying its *Finley* motion, raises the potential issue of whether that denial was erroneous. OSAD concludes that it was not erroneous, for the defendant failed to establish cause and prejudice for his failure to raise his claim earlier. This court agrees with OSAD's assessment.

¶ 42    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) prescribes the pleading standards for successive postconviction petitions. The Act provides:

"(f) Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific

11

claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id*. § 122-1(f).

¶ 43 Section 122-1(f) of the Act requires a petitioner to plead facts sufficient to support a finding of both cause and prejudice for each individual claim asserted in a proposed successive postconviction petition. *People v. Pitsonbarger*, 205 Ill. 2d 444, 463 (2002). The court alone, without input from the State, decides the legal question of whether the defendant has made a *prima facie* showing of cause and prejudice. *People v. Bailey*, 2017 IL 121450, ¶ 24. Leave of court to file a successive petition should be denied "when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35. See *Pitsonbarger*, 205 Ill. 2d at 463 ("a petitioner must establish cause and prejudice as to each individual claim asserted in a successive petition."). A defendant cannot obtain leave of court unless he satisfies each of the two elements of cause and prejudice; it is not sufficient to establish only one element. *People v. Guerrero*, 2012 IL 112020, ¶ 15.

¶ 44 This court reviews *de novo* the circuit court's denial of a motion for leave to file a successive postconviction petition. *People v. Robinson*, 2020 IL 123849, ¶ 39. Under a *de novo* standard, this court reviews only the circuit court's judgment and not the reasons for the judgment. *People v. Lee*, 344 Ill. App. 3d 851, 853 (2003).

¶ 45    The defendant sought to raise a claim that his sentence of life imprisonment violated the eighth amendment. In his motion for leave, the defendant asserted that the decision in *Miller*, 567 U.S. 460, gave him cause for raising this new constitutional challenge to his sentence.

¶ 46    The court in *Miller* held that the eighth amendment to the United States Constitution prohibits the mandatory sentencing of juveniles to life imprisonment without parole. *Id*. at 489. The *Miller* decision applied solely to juveniles; its holding did not extend to adults. *People v. Moore*, 2023 IL 126461, ¶ 38. *Miller* did not effect any change in the law concerning adults like the defendant, who was 24 years old at the time he committed murder in 1985. See *Id*. (the holding in *Miller* "did not change the law applicable to young adults like Moore and Williams," who were 19 years old at the time they committed murder). Due to the inapplicability of *Miller*, the defendant did not plead sufficient facts to support a finding of cause for failing to raise his eighth-amendment challenge prior to his fourth motion for leave. See *Id.* ("*Miller* did not give [the defendants] cause to raise new challenges to their sentences as violations of the eighth amendment."). Where cause was not established, the circuit court did not err in denying the defendant leave to file a successive petition.

¶ 47    Even if the *Miller* decision did apply in the defendant's case, the timing of the defendant's claim would be fatal to a showing of cause. The defendant filed his initial postconviction petition in 2000. (Actually, the defendant filed a "motion for retrial and to vacate sentence," but the circuit court treated the motion as an initial postconviction petition.). The *Miller* case was not decided until 2012. Therefore, the defendant could not have relied on *Miller* at the time he filed his initial petition. However, from the date *Miller* was decided to the date the defendant filed his fourth motion for leave to file a successive postconviction petition, 12 years and 6 months had passed. The defendant does not explain, and nothing in the record explains, his failure to raise his *Miller*-

13

based claim during all that time. The cause prong of the cause-and-prejudice test has not been satisfied.

¶ 48    Finally, the courts have already considered the defendant's mental illness when deciding on his sentence, even though *Miller* was not decided until decades after the defendant was sentenced in 1986. Following his plea of guilty but mentally ill, clinical psychologist Dr. Golden and psychiatrist Dr. Shuman examined the defendant and wrote reports on his mental health. The circuit court examined those reports, along with Dr. Flynn's fitness report, before finding a factual basis that the defendant was mentally ill at the time of his offense. The court had those reports before it at the time of sentencing. Also, in the direct appeal to this court, the defendant argued that his sentence of natural life imprisonment was excessive in light of his mental illness, etc. *Barnhill*, 188 Ill. App. 3d at 314. This court considered and rejected that argument, affirming the judgment of conviction. *Id.* at 315-16. As the circuit court suggested in its March 13, 2025, order denying the defendant's fourth motion for leave, the courts, in effect, have already done that which the defendant says they must do under *Miller*.

¶ 49                                        III. CONCLUSION

¶ 50    For the foregoing reasons, this court finds that the circuit court did not err in denying the defendant's fourth motion for leave to file a successive postconviction petition. No argument to the contrary would have arguable merit. Accordingly, the defendant's counsel in this appeal is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 51    Motion granted; judgment affirmed.

14